UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORINDA IZAZAGA CARDENAS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC., et al.,<br><br>Defendants. | Case No. 24-cv-04248-DMR<br><br>**ORDER GRANTING DEFENDANT CALIFORNIA FORENSIC MEDICAL GROUP, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 62 |

Defendant California Forensic Medical Group, Inc. ("CFMG") moves to dismiss Plaintiff Florinda Izazaga Cardenas' Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 62 (Mot.); *see* Docket No. 61 (TAC).] Plaintiff filed an opposition (Docket No. 67 (Opp'n)), and CFMG filed a reply (Docket No. 68 (Reply)). Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for disposition without oral argument and vacates the December 11, 2025 hearing.

Having considered the parties' arguments, the relevant legal authority, and the record in this case, the court grants CFMG's motion.

**I.   BACKGROUND**

**A.   Allegations in the TAC[1]**

Plaintiff is the biological mother of Daniel Rivera Izazaga ("Izazaga" or "Decedent"), an adult who died intestate and unmarried. TAC ¶¶ 5, 6. On August 15, 2023, Mr. Izazaga was arrested and taken into custody at the Napa County Sheriff's Office at the Napa County Jail, where he

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

remained for three months. *Id.* ¶¶ 1, 12. While in custody, Mr. Izazaga complained to medical staff that he was frustrated with being held in jail; jail staff were picking on him, including by punishing him for small issues over which he had no control or was not involved; and he was losing the will to live. *Id.* ¶ 13.

Pursuant to a contract with the County of Napa, CFMG provided psychiatric care to prisoners and detainees in Napa County jails. *Id.* ¶ 7. CFMG is responsible for enforcing policies, procedures, and training related to the medical care of prisoners and detainees in the County of Napa jails. *Id.* In response to Mr. Izazaga's complaints and in light of his suicidal ideations, CFMG and Wellpath, LLC[2] medical staff diagnosed Mr. Izazaga with depression.[3] *Id.* ¶ 13.

After repeated express suicidal ideations, Does 1–25 placed Mr. Izazaga in solitary confinement as punishment for small issues. *Id.* ¶ 14. While in solitary confinement, and after having been diagnosed with depression, Mr. Izazaga continued to express to jail staff his frustration, increasing depression, and lack of will to live. *Id.* Does 1–25 did nothing to intervene, did not report his suicidal ideations, and did not take precautions to prevent Mr. Izazaga from acting on his

---

[2] As explained below, Wellpath is no longer a party to this action, and the TAC does not clearly allege Wellpath's role in the events at issue. Plaintiff's prior second amended complaint alleged that,

> [o]n information and belief, Defendant WELLPATH is engaged in a management service agreement with Defendant CFMG in which Defendant WELLPATH dictates Defendant CFMG's policies and procedures. Furthermore, on information and belief, Defendant WELLPATH maintains exclusive control over Defendant CFMG's staffing and employment decisions. Defendant WELLPATH is thus a managing agent of Defendant CFMG. On information and belief, Defendant WELLPATH and its employees and agents are responsible for making policies, procedures, and training, as well as hiring the appropriate staff, for detention facilities in which Defendant CFMG provides medical care, including but not limited to County of Napa jails.

[Docket No. 31 ¶ 8.]

The TAC also interchangeably capitalizes "WellPath" and "Wellpath." *See, e.g.*, TAC ¶¶ 8, 13. Consistent with Wellpath's statement (Docket No. 80), the court uses "Wellpath" here.

[3] The TAC alleges that, "[i]n response, CFMG & WellPath medical staff diagnosed *Plaintiff* with depression due to his suicidal ideations." *Id.* ¶ 13 (emphasis added). The court assumes that Mr. Izazaga was diagnosed with depression, not Plaintiff.

1  suicidal ideations. *Id.*

2  Napa County Jail is equipped with safety cells that are designed to prevent inmates
3  expressing suicidal ideations from acting on them. *Id.* ¶ 15. Per Napa County Jail policy, these
4  safety cells are used and observations increased to ensure that suicidal inmates are kept safe. *Id.*
5  Plaintiff alleges, on information and belief, that the solitary confinement cell in which Mr. Izazaga
6  was held was located in general population and was not a safety cell. *Id.*

7  On October 15, 2023, Mr. Izazaga hung himself in his cell. *Id.* Mr. Izazaga was rushed to
8  Queen of the Valley Medical Center in Napa, California and was placed on life support. *Id.* ¶ 16.
9  He was taken off life support and passed away on October 24, 2023. *Id.*

10  Plaintiff alleges, on information and belief, that Mr. Izazaga would not have had access to
11  the materials required to hang himself but for the Doe Defendants' decision to house him in general
12  population and not to place him under the highest level of medical supervision. *Id.* ¶ 17. After his
13  death, Plaintiff and her family attempted to get information from the County of Napa regarding his
14  detention and passing. *Id.* ¶ 18. They were "repeatedly stonewalled" and told that they would need
15  to hire a lawyer to obtain any such information. *Id.*

16  **B.     Procedural History**

17  Plaintiff filed her initial complaint on July 15, 2024. [*See* Docket No. 1.] The complaint
18  named as Defendants the County of Napa (the "County") and Does 1–50, employees of the County
19  whose true names and/or capacities were unknown to Plaintiff. *Id.* ¶¶ 8–9.

20  Plaintiff asserted five claims for relief: (1) a 42 U.S.C. § 1983 claim for deliberate
21  indifference to Mr. Izazaga's serious medical needs while in custody in violation of the Fourteenth
22  Amendment, by Plaintiff as successor-in-interest to Mr. Izazaga against Does 1–50; (2) a § 1983
23  claim for violation of Plaintiff's right to familial association based upon the Fourteenth Amendment,
24  by Plaintiff individually against Does 1–50; (3) negligence and wrongful death, by Plaintiff
25  individually and as successor-in-interest against Does 1–50 and the County; (4) violation of the
26  Bane Act, Cal. Civ. Code § 52.1, by Plaintiff individually against Does 1–50 and the County; and
27  (5) violation of California Government Code section 845.6, by Plaintiff individually and as
28  successor-in-interest against Does 1–50 and the County. *Id.* ¶¶ 22–48.

3

1     On August 23, 2024, Plaintiff filed a first amended complaint ("FAC"), which continued to name the County and Does 1–50 as defendants. [Docket No. 12 (FAC).] The FAC dropped the wrongful death claim but otherwise asserted the same claims against the same Defendants as the initial complaint. *Id.* ¶¶ 24–50.

       The County moved to dismiss the negligence, Bane Act, and section 845.6 claims pursuant to Rule 12(b)(6). [Docket No. 14.] The court denied the motion as to the Bane Act claim, but dismissed Plaintiff's individual section 845.6 claim with prejudice, dismissed the section 845.6 claim by Plaintiff as successor-in-interest with leave to amend, and dismissed Plaintiff's successor-in-interest negligence claims based upon violation of section 845.6 and deliberate indifference to Mr. Izazaga's serious medical need with leave to amend. [Docket No. 24 at 8–9.]

       On December 12, 2024, Plaintiff filed her second amended complaint ("SAC"). [Docket No. 31 (SAC).] The SAC dropped the County, named for the first time Wellpath and CFMG as Defendants, and identified Does 1–50 as "employees of the County of Napa, Defendant WELLPATH, and/or Defendant CFMG." *Id.* ¶¶ 7–9. The SAC asserted two claims: (1) a § 1983 claim for deliberate indifference to Mr. Izazaga's serious medical needs while in custody in violation of the Fourteenth Amendment, by Plaintiff as successor-in-interest to Mr. Izazaga against Does 1–50; and (2) negligence against Does 1–50, Wellpath, and CFMG by Plaintiff individually and as successor-in-interest to Mr. Izazaga. *Id.* ¶¶ 22–32.

       On February 13, 2025, Wellpath and CFMG filed a Suggestion of Bankruptcy and Notice of Stay, which stated that, on November 11, 2024, Wellpath Holdings, LLC had filed for chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. [Docket No. 38; *see In re Wellpath Holdings, Inc.*, Case No. 24-90533 (ARP) (S.D. Tex.).] On January 14, 2025, the Bankruptcy Court extended the automatic stays, the effect of which meant that "all parties [we]re stayed from any further continuation of these proceedings until such time as the Bankruptcy Court may order otherwise." [Docket No. 38 at 5.] On February 18, 2025, in light of the Bankruptcy Court's order, the court stayed the case in its entirety and ordered the parties to file a status report within 30 days of the close of bankruptcy proceedings or earlier if permitted by the Bankruptcy Court. [Docket No. 39.]

1    In a June 5, 2025 filing, Plaintiff and CFMG informed the court that the automatic stays against CFMG and Wellpath LLC had expired and requested that the court lift the stay in this action. [Docket No. 43.] The court thus lifted the stay and scheduled a case management conference for August 20, 2025. [Docket Nos. 44, 45.]

In response to the court's order to file a status report, Plaintiff stated that it intended to dismiss Wellpath and continue the litigation against CFMG and the Doe Defendants. [Docket No. 50.] On August 25, 2025, the parties stipulated to allow Plaintiff to file a third amended complaint that replaced Wellpath with Nominal Defendant Matthew J. Dundon as Trustee of the Wellpath Liquidating Trust. [Docket No. 57.] The court granted the stipulation, and, on September 2, 2025, Plaintiff filed the operative TAC. [Docket Nos. 58–61.]

The TAC asserts two claims: (1) a § 1983 claim for deliberate indifference to Mr. Izazaga's serious medical needs while in custody in violation of the Fourteenth Amendment, by Plaintiff as successor-in-interest to Mr. Izazaga against Does 1–50; and (2) negligence by Plaintiff, individually and as successor-in-interest to Mr. Izazaga, against Does 1–50, Dundon, and CFMG. *Id.* ¶¶ 22–32.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (internal quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

1	Under Federal Rule of Civil Procedure 15(a)(1), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (cleaned up). However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (cleaned up).

**III.  ANALYSIS**

CFMG moves to dismiss both claims on grounds that they are time barred and because the TAC fails to state a claim.

**A.  Statute of Limitations**

CFMG argues that the one-year statute of limitations in California's Medical Injury Compensation Reform Act ("MICRA") applies to, and thus bars, each of Plaintiff's claims. Mot. at 9–12; *see* Cal. Civ. Proc. Code § 340.5. Plaintiff contends that the claims are timely, as they are governed by California's two-year limitations period for personal injury actions. Opp'n at 4–6.

"In 1975, the Legislature enacted MICRA which, among other things, revised a number of legal rules applicable to professional negligence actions against health care providers." *Coe v. Superior Ct.*, 220 Cal. App. 3d 48, 50 (1990). MICRA provides that, "[i]n an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Civ. Proc. Code § 340.5.

"Where the plaintiff's claim is premised on the violation of a professional obligation owed in the rendering of a patient's medical care, treatment, or diagnoses, the claim sounds in professional negligence and the MICRA statute of limitations will apply." *Gutierrez v. Tostado*, 18 Cal. 5th 222, 238 (2025); *see Flores v. Presbyterian Intercommunity Hosp.*, 63 Cal. 4th 75, 88 (2016) (MICRA's "special statute of limitations for professional negligence actions against health care providers

6

1   applies only to actions alleging injury suffered as a result of negligence in rendering the professional
2   services that hospitals and others provide by virtue of being health care professionals: that is, the
3   provision of medical care to patients."). "Where, in contrast, the alleged negligence does not
4   implicate a specific professional obligation along the foregoing lines and violates only the duty of
5   ordinary care owed to the general public, the claim does not involve professional negligence and the
6   MICRA statute of limitations is inapplicable." *Gutierrez*, 18 Cal. 5th at 238.

### 1.      Section 1983 Claim

MICRA's statute of limitations does not apply to Plaintiff's § 1983 claim based on deliberate indifference to Mr. Izazaga's Fourteenth Amendment rights, as MICRA "does not apply in whole or in part to federal civil rights actions." *Ellis v. City of San Diego, California*, 176 F.3d 1183, 1186 (9th Cir. 1999), *as amended on denial of reh'g* (June 23, 1999); *see Hudacko v. Regents of Univ. of California*, No. 23-CV-05316-SI, 2024 WL 3908113, at *10 (N.D. Cal. Aug. 20, 2024), *aff'd*, No. 24-7360, 2025 WL 2965766 (9th Cir. Oct. 21, 2025) ("With respect to the federal claims, the Ninth Circuit has also held that claims for violations of federal constitutional rights pursuant to 42 U.S.C. § 1983 are not subject to MICRA.") (citing *Ellis*, 176 F.3d at 1191); *Wilson v. Tuolomne Cnty.*, No. 21-CV-00196-KES-SKO (PC), 2025 WL 2324115, at *4 (E.D. Cal. Aug. 12, 2025), *report and recommendation vacated on other grounds*, No. 21-CV-00196-KES-SKO (PC), 2025 WL 2495590 (E.D. Cal. Aug. 29, 2025) ("Additionally, the Court notes that section 340.5, California's Medical Injury Compensation Reform Act (MICRA), has no application to suits for violations of federal constitutional rights pursuant to section 1983.") (citing *Ellis*, 176 F.3d at 1191).

CFMG argues that "*Ellis* does not stand for the proposition that § 340.5 cannot be applied to a medical malpractice claim under § 1983; rather, it holds that § 340.5 does not 'protect' those who 'assum[e] . . . the function of a law enforcement official.'" Reply at 2 (quoting *Ellis*, 176 F.3d at 1191). In *Ellis*, the plaintiff was arrested and transported to a hospital, where he "protested that he would not consent to any tests" and, after struggling, was "forcefully restrained . . . and tied . . . to [a] table." 176 F.3d at 1187. The plaintiff was tranquilized and, upon waking, "his arms were 'sore and had blood spots on them where the medical persons had taken his blood'" and his "pants and underpants were pulled down to his ankles and there was tubing in his penis, which had been

inserted by Dr. Karen Van Hoesen . . . while he was sedated." *Id.*

In holding that MICRA did not apply, the Ninth Circuit explained that "[t]he relevant distinction . . . lies in the purpose for which the procedure is performed." *Id.* at 1190. In *Ellis*, the plaintiff's "complaint allege[d] that Van Hoesen acted in an entirely different capacity-that of a law enforcement agent looking for evidence of a crime" such that Van Hoesen was "more like a police agent than a doctor." *Id.* In other words, the plaintiff "su[ed] Van Hoesen not for incorrectly inserting the catheter or needle while treating him, but for searching his bladder and bloodstream without a warrant or probable cause, and for using excessive force while doing so. Van Hoesen [wa]s therefore not being sued for the manner in which she performed *medical services or treatment*, but because of her assumption of the function of a law enforcement official; MICRA does not protect her with respect to the latter form of conduct." *Id.* at 1191 (emphasis in the original). The *Ellis* court went on to broadly hold that "MICRA simply has no application to suits for violations of federal constitutional rights pursuant to 42 U.S.C. § 1983." *Ellis*, 176 F.3d at 1191.

District courts have since followed *Ellis* to find that MICRA does not apply to federal civil rights claims generally. *See, e.g.*, *Hudacko*, 2024 WL 3908113, at *10; *Wilson*, 2025 WL 2324115, at *4; *Gopen v. Regents of the Univ. of California*, No. SACV 15-2062 JVS (KESx), 2016 WL 11745945, at *2 (C.D. Cal. Aug. 2, 2016) ("'[MICRA] does not apply in whole or in part to federal civil rights actions.' . . . The ADA and the Rehab Act are both federal civil rights statutes. . . . MICRA's noneconomic damages cap therefore does not apply to Gopen's ADA and Rehab Act damages claims.") (quoting *Ellis*, 176 F.3d at 1186; brackets in the original); *see also Estate of Lee v. California Dep't of Corr. & Rehab.*, No. 20-cv-01161-JAM-CDK, 2021 WL 325676, at *2 (E.D. Cal. Feb. 1, 2021) ("First, § 340.5 applies to claims 'against a health care provider based upon such person's alleged professional negligence.' . . . Plaintiff's § 1983 claims are not based on Defendant's professional negligence but rather on her deliberate indifference. . . . As such, § 340.5 is inapplicable to this claim by its very terms.") (emphasis in the original); *Parlin v. Sodhi*, No. CV 10-6120 VBF MRW, 2011 WL 6740322, at *3 (C.D. Cal. Nov. 17, 2011), *report and recommendation adopted*, No. CV 10-6120 VBF MRW, 2011 WL 6440574 (C.D. Cal. Dec. 21, 2011) (rejecting argument that action was time-barred because it was not filed "within the one-year

time period governing tort claims against a health care provider under California Code of Civil Procedure section 340.5"; "federal civil rights actions under [42] U.S.C. § 1983 are governed by the state's two-year general statute of limitations for personal injury actions under California Code of Civil Procedure section 335.1."); *Townsend through Townsend v. Cnty. of Santa Cruz*, No. 19-CV-00630-BLF, 2021 WL 3913174, at *12 (N.D. Cal. Sept. 1, 2021) (denying, on summary judgment, request to find MICRA's damages cap applicable to § 1983 claim).

As in *Ellis*, Plaintiff's § 1983 claim is based on a violation of Mr. Izazaga's constitutional rights. *See* TAC ¶ 23 ("Defendants DOES 1–50 violated 42 U.S.C. §1983, depriving Decedent of . . . [t]he right to be free from deliberate indifference to Decedent's serious medical needs while in custody as secured by the Fourteenth Amendment."). This too makes MICRA inapplicable to the claim. *See Estate of Lee*, 2021 WL 325676, at *2 (E.D. Cal. Feb. 1, 2021) ("Plaintiff's § 1983 claims are not based on Defendant's professional negligence but rather on her deliberate indifference [to serious medical needs in violation of the Eighth Amendment]. . . . As such, § 340.5 is inapplicable to this claim by its very terms.").

For these reasons, the court finds that Plaintiff's § 1983 claim is governed by the two-year statute of limitations. *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) ("It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims . . . and in California, that limitations period is two years."). Because Plaintiff initiated this action and named CFMG as a defendant within the two-year limitations period, the claim is timely.

### 2. Negligence Claim

#### a. Application of MICRA

CFMG argues that "the one-year statute of limitations that is established in § 340.5 overrides the two-year statute of limitations contemplated by § 335.1 when the allegation involves a healthcare provider" such as CFMG. Mot. at 10; *see* Cal. Civ. Proc. Code § 335.1 ("An action for . . . the death of[] an individual caused by the wrongful act or neglect of another" must be brought "[w]ithin two years[.]"). Plaintiff contends that her "negligence claim is *not* based on medical malpractice." Opp'n at 6 (emphasis in the original). Rather, the "claim is based on the Doe Defendants' deliberate

indifference to [Izazaga]'s serious medical needs." *Id.*; *see id.* ("By acting with deliberate indifference, the Doe Defendants breached their general duty—applicable to medical and non-medical jail staff alike—to protect [Izazaga] from foreseeable harm.").

"[W]hen a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the 'professional negligence' of the health care provider so as to trigger MICRA." *Smith v. Ben Bennett, Inc.*, 133 Cal. App. 4th 1507, 1514 (2005); *id.* (noting that "additional causes of action frequently arise out of the same facts as a medical malpractice cause of action."). MICRA defines "professional negligence" as

> a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

Cal. Civ. Proc. Code § 340.5(2). "California Courts have broadly construed 'professional negligence' to mean negligence occurring during the rendering of services for which the health care provider is licensed." *Lindsay v. Am. Red Cross*, No. 23-CV-05987-BLF, 2024 WL 2125614, at *2 (N.D. Cal. May 10, 2024) (citing *Canister v. Emergency Ambulance Serv., Inc.*, 160 Cal. App. 4th 388, 406–07 (2008); *Flores*, 63 Cal. 4th at 84).

The TAC belies Plaintiff's characterization of her claim as one of general negligence and not medical malpractice. The TAC alleges that CFMG provided professional services in the form of psychiatric care, and that the alleged misconduct occurred during the performance of those services. TAC ¶ 7 ("Defendant CFMG provided psychiatric care to prisoners and detainees in County of Napa jails, pursuant to contract with the County of Napa. On information and belief, CFMG and its employees and agents are responsible for enforcing policies, procedures, and training related to the medical care of prisoners and detainees in the County of Napa jails."); *id.* ¶ 13 ("In response, CFMG & WellPath medical staff diagnosed [Mr. Izazaga] with depression due to his suicidal ideations."); *id.* ¶ 14 ("Does 1–25 did nothing to intervene, did not report Decedent's suicidal ideations or take precautions to prevent Decedent from acting on his suicidal ideations.").

10

These allegations are sufficient to trigger the one-year statute of limitations set forth in section 340.5.

As Mr. Izazaga passed away on October 24, 2023 (TAC ¶ 16), the statute of limitations thus expired on October 24, 2024. Because Plaintiff named CFMG for the first time in the SAC, which was filed on December 12, 2024, the negligence claim is time-barred unless the claim relates back to a timely-filed complaint.

### b.     Relation Back Doctrine

Although Plaintiff initiated this action within one year of Mr. Izazaga's October 24, 2023 passing, she did not name CFMG as a defendant until filing the SAC on December 12, 2024. Because MICRA's one-year limitations period applies, Plaintiff's negligence claim against CFMG is time-barred unless the SAC relates back to the July 15, 2024 initial complaint or the August 23, 2024 FAC.

CFMG argues that the relation back doctrine cannot save the negligence claim. CFMG asserts that "by December 2024, the lawsuit and Plaintiff's ability to conduct discovery had been ongoing for almost 6 months." Mot. at 11. According to CFMG, "[i]f a complaint alleged to be based on provision of medical care at the Napa County Jail did not involve discovery into the medical provider at Napa County Jail until December 2024, after the statute of limitations had expired and after months of litigation, that was a 'fully informed decision' by Plaintiff's counsel." *Id.* (citing *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 552 (2010)). CFMG further argues that it "received no notice of intent to sue prior to October 15, 2024, meaning there are also no grounds for a potential 90-day extension of the statute of limitations under Cal. Civ. Proc. § 364(d)." *Id.*

Plaintiff expressly refused to argue the application of the relation back doctrine. Plaintiff states that, "[b]ecause Plaintiff's negligence claim is not based on medical malpractice and was timely alleged against Defendant CFMG within the two-year limitations period for personal injury actions, *Plaintiff will not address the relation back doctrine under FRCP 15*." Opp'n at 6 n.1 (emphasis added.) Plaintiff's strategic decision to intentionally decline to address CFMG's relation back argument constitutes waiver. *See Reis v. McKinsey & Co., Inc.*, No. 25-CV-00393-LB, 2025 WL 1809737, at *3 n.16 (N.D. Cal. June 30, 2025) ("The failure to address an argument is a

11

concession of it.") (citations omitted); *Diggs v. Marriott Hotel Servs., LLC*, No. 24-CV-6977 NC, 2024 WL 5151139, at *1 (N.D. Cal. Nov. 7, 2024), *appeal dismissed*, No. 24-7231, 2024 WL 5442020 (9th Cir. Dec. 19, 2024) ("A party's failure to meaningfully respond to an opposing party's argument typically amounts to waiver, concession, or abandonment of any arguments in opposition.") (citations omitted).

Accordingly, Plaintiff has waived the relation back doctrine. Because the SAC was filed more than one year after Mr. Izazaga's death, the negligence claim is time-barred and dismissed without leave to amend.[4]

### B. Failure to State a § 1983 Claim

CFMG argues that the TAC fails to state a § 1983 claim for two reasons. First, the TAC lacks any "allegations involving a failure to provide care, a delay in care, or anything close to the affirmatively culpable conduct required to sustain a deliberate indifference claim." Mot. at 14. Second, CFMG contends that the TAC fails to allege any causation between the alleged misconduct by CFMG or CFMG employees and Mr. Izazaga's suicide. *Id.* at 15.

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citation omitted). Furthermore, "to establish liability under Section 1983, a plaintiff must show that an individual defendant personally participated in the alleged constitutional violation." *Williams v. City of Oakland*, No. 17-CV-05238-YGR, 2018 WL 3972323, at *4 (N.D. Cal. Aug. 20, 2018) (citing *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010)). The Ninth Circuit has thus "rejected the 'team effort' standard that allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Hopkins v. Bonvicino*, 573 F.3d 752, 769–70 (9th Cir. 2009) (cleaned up).

In addition, "the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made

---

[4] Because the court finds the negligence claim is time-barred, it does not reach CFMG's argument that the TAC fails to state such a claim. *See* Mot. at 15–17.

an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The court finds that the TAC does not sufficiently allege that CFMG employees' conduct led to Mr. Izazaga's death. The TAC alleges that, "[a]fter repeated expressed suicidal ideations, Does 1–25 placed Decedent in solitary confinement for small issues in order to punish Decedent." TAC ¶ 14. "While in solitary confinement and after already having received a diagnosis of depression for expressing suicidal ideations, Decedent continued to express to jail staff his frustration, increasing depression and lack of will . . . to live[,]" yet "Does 1–25 did nothing to intervene, did not report his suicidal ideations or take precautions to prevent Decedent from acting on his suicidal ideations." *Id.*

These allegations impermissibly lump Defendants together, making it impossible to distinguish each Defendant's role, if any, in the alleged misconduct. *See Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 922 (N.D. Cal. 2024) ("Undifferentiated group pleading that does not 'indicate which individual defendant or defendants were responsible for which wrongful act' is impermissible under Rule 8 because it fails to provide such notice.") (quoting *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003)); *Morris v. Sun Pharma Glob. Inc.*, No. 20-10441 PA (JPRx), 2021 WL 3913191, at *3 (C.D. Cal. May 13, 2021) ("One common type of impermissible shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong.") (cleaned up).

For instance, it is unclear whether CFMG employees were involved in the decision to place Mr. Izazaga in solitary confinement, failed to report his suicidal ideations, and/or failed to take steps to prevent him from taking his life. There is no indication as to whether "Does 1–25"—notably a subset of the Does 1–50 who allegedly violated Mr. Izazaga's Fourteenth Amendment rights—are

13

employees of the County of Napa, Wellpath, CFMG, or some combination thereof. *See* TAC ¶ 9 ("Defendants DOES 1 through 50 are employees of the County of Napa, Defendant WELLPATH, and/or Defendant CFMG."); *id.* ¶ 23 ("By the actions and omissions described above, Defendants DOES 1–50 violated 42 U.S.C. §1983 . . ."); *id.* ¶ 24 ("Defendants DOES 1–50 subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein with reckless disregard for whether the rights and safety of Decedent would be violated by their acts and/or omissions.").

It is also unclear whether Mr. Izazaga informed CFMG employees about his frustration, depression, and lack of will to live such that CFMG could take appropriate measures to prevent his death. While paragraph 14 of the TAC refers to "jail staff," there is no indication that "jail staff" includes CFMG employees as opposed to County of Napa or Wellpath employees. Indeed, the TAC distinguishes between "jail staff" and "medical staff." The TAC alleges that, "[d]uring Decedent's time at the Napa County Jail, Decedent began to complain to *medical staff* that he was frustrated with being held in jail, that *[t]he jail staff* were picking on him, punishing him for small issues that he had no control over . . ." *Id.* ¶ 13 (emphasis added). If "medical staff" were the same as "jail staff," Plaintiff presumably would have used the same term to describe them. That she did not suggests that "medical staff" is different from "jail staff."

Plaintiff's opposition cannot save the claim. Plaintiff argues that "Decedent was experiencing an ongoing psychiatric emergency while in custody, in which Decedent expressed to *jail medical staff* that he was losing the will to live" and that "the *Doe Defendant CFMG employees* ignored Decedent's suicidal ideations, refrained from alerting County jail personnel that Decedent posed a serious risk of suicide, refused to put Decedent in a safety cell, and failed to put Decedent under heightened observation." Opp'n at 12 (emphasis added). The TAC, however, is not so specific. The TAC identifies "jail staff" generally, not "jail medical staff," and "Does 1–25," not "Doe Defendant CFMG employees." *Compare* TAC ¶ 14 *with* Opp'n at 12. Plaintiff cannot attempt to rewrite the TAC's allegations through her opposition. *See Heineke v. Santa Clara Univ.*, No. 17-CV-05285-LHK, 2017 WL 6026248, at *16 (N.D. Cal. Dec. 5, 2017) ("'[T]he complaint may not be amended by briefs in opposition to a motion to dismiss.'") (quoting *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010)).

14

The court dismisses Plaintiff's § 1983 claim. As it is not readily apparent that amendment would be futile, the dismissal is with leave to amend.

**IV. CONCLUSION**

For the foregoing reasons, the court dismisses Plaintiff's § 1983 claim with leave to amend and dismisses the negligence claim without leave to amend. Plaintiff's amended complaint, if any, shall be filed by December 19, 2025.

**IT IS SO ORDERED.**

Dated: December 5, 2025

_____
Donna M. Ryu
Chief Magistrate Judge